## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Hillery J. Brinson,

        Plaintiff,

v.

Eagle Express Lines, Inc.,

        Defendant.

No. 18 CV 3733

Honorable Nancy L. Maldonado

## MEMORANDUM OPINION AND ORDER

Plaintiff Hillery Brinson filed this lawsuit alleging that his former employer, Defendant Eagle Express Lines, Inc. ("Eagle Express") violated Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2 *et seq*, by subjecting Brinson to sexual harassment and a hostile work environment based on the conduct of another employee, Jim Berry. Brinson additionally alleges that Eagle Express retaliated against him by terminating him after he reported the sexual harassment. Pending before the Court is Eagle Express' motion for summary judgment. (Dkt. 34.)[1] For the reasons set forth below, Eagle Express' motion is denied as to Brinson's sexual harassment hostile work environment claim and granted as to Brinson's retaliation claim.

### Background

The factual record the Court considers when ruling on this motion for summary judgment is largely framed by the parties' Local Rule 56.1 statements and responses, although the Court retains discretion to "consider other materials in the record" where appropriate. Fed. R. Civ. P.

---

[1] In citations to the docket, page numbers are taken from the CM/ECF header, except when the Court cites to deposition testimony, in which case the Court cites to the internal transcript page and line number.

56(c)(3). Except as otherwise noted below, the following represents the undisputed facts as presented in the parties' Local Rule 56.1 statements.[2] Where the facts are disputed, the Court indicates each side's position.

Brinson is a male and a former employee of Eagle Express, where he worked from 2014 until his termination on April 22, 2016. (Dkt. 43 ¶¶ 2, 54; Dkt. 48 ¶¶ 1, 22.) Eagle Express is a contract carrier, and the majority of its contracts are with the United States Postal Service ("USPS") (Dkt. 43 ¶ 4.) It is vital to Eagle Express' business that it maintain a good relationship with USPS, its primary customer. (Dkt. 43 ¶ 5.) At Eagle Express, Brinson was a truck driver who delivered mail to various postal facilities. (Dkt. 43 ¶¶ 14, 16; Dkt. 48 ¶ 1.) His daily job duties included pre-checking the tractor-trailers, checking the mail and securing it, receiving dispatch orders to deliver the mail to six or seven facilities, unloading the mail at those facilities, and filling in a log sheet. (Dkt. 43 ¶ 16; Dkt. 48 ¶ 2.) Over the course of a typical workday, Brinson mainly encountered other drivers employed by Eagle Express. (Dkt. 43 ¶ 19.) Around the time of Brinson's termination, there were over 20 Eagle Express drivers, including Brinson, reporting out of the Fox Valley postal facility, one of whom was a female driver. (Dkt. 43 ¶¶ 20, 21; Pl.'s Dep. Dkt. 44-1 at 30:14–18, 31:5–12.) Jim Berry was another driver at Eagle Express whom Brinson would see at different facilities while at work. (Dkt. 48 ¶ 4.) Brinson and Berry had the same job duties and Berry was not Brinson's supervisor. (*Id.*)

Eagle Express maintains a Prohibited Harassment Policy that strictly prohibits harassment of any kind, including sexual harassment. (Dkt. 43 ¶ 8.) This policy establishes a complaint

---

[2] The Court cites to Brinson's response to Eagle Express's statement of facts, (Dkt. 43), and Eagle Express's response to Brinson's additional facts, (Dkt. 48) where both the asserted fact and the opposing party's response are set forth in one document.

2

procedure that requires employees to immediately report any complaints or concerns of harassment to their supervisor, the director of human resources, the safety director, or the president of the company. (Dkt. 43 ¶ 8; Dkt. 34-2 at 7.) Eagle Express also maintains a "zero-tolerance" anti-violence policy, which in pertinent part states "that NO arguments with other Eagle Express Lines employees or any employees of the customer (USPS or other) will be tolerated. No acts of violence of any kind (including verbal threats, aggressive acts towards another person) will be tolerated." (Dkt. 43 ¶¶ 10, 11; Dkt. 36-1 at 8.) Upon being hired, Brinson received a copy of the anti-violence policy and signed it acknowledging that he understood it. (Dkt. 43 ¶ 13.)

According to Brinson, Berry sexually harassed him from about December 2015[3] through March 2016. Although Eagle Express disputes that any harassment actually occurred, citing to its own internal investigation, it acknowledges that Brinson testified at his deposition that Berry harassed him on three occasions (Dkt. 43 ¶ 39; Dkt. 48 ¶¶ 9–10, 12–16.) Brinson also testified that the harassment "would happen whenever [he would] see [Berry]," and that he did not keep count of the number of days the harassment would occur. (Pl.'s Dep. Dkt. 44-1 at 61:19–24; Dkt. 48 ¶ 12.) Eagle Express responds to this testimony by again simply repeating that it determined no harassment occurred based on its own investigation. (Dkt. 48 ¶ 12.) In any event, with the qualification that Eagle Express disputes Brinson's version of events or that any harassment occurred, the Court will set out the details of each of the alleged incidents below based on

---

[3] The parties' briefing and statements of facts state that the alleged sexual harassment began in December 2016, citing to Brinson's deposition. (Dkt. 35 at 3; Dkt. 43 ¶ 40; Dkt. 45 at 2; Dkt. 48 ¶ 9; *see* Pl.'s Dep. Dkt. 44-1 at 54:22–55:6) (answering the question of when the first incident of sexual harassment occurred, Brinson replied "That was in 2016, around December. December or maybe a little earlier. I can't recall the exact dates.").) The parties do not dispute that all alleged harassment occurred while Brinson was at work at Eagle Express. The parties further do not dispute that Eagle Express terminated Brinson on April 22, 2016 (Dkt. 43 ¶ 54.) The harassment thus could not have occurred in December 2016, because Brinson was not an Eagle Express employee in December 2016. The Court instead infers based on Brinson's deposition testimony that the alleged harassment began in December 2015.

3

Brinson's deposition testimony.

The first instance of alleged harassment occurred at the Fox Valley postal facility, where Brinson testified that Berry "was coming on to me, wanted to go out with me, asking, 'hey, do you want to come over to my house and be with me?'" (Dkt. 43 ¶ 40; Pl.'s Dep. Dkt. 44-1 at 55:1–15.) Brinson responded "no, I don't want to." (Pl.'s Dep. Dkt. 44-1 at 55:15.) Berry also asked if he could wear Brinson's hat and commented on Brinson's jeans, specifically saying that the jeans "look real good on you, want to come be with me, want to come to my house?" (Pl.'s Dep. Dkt. 44-1 at 56:3–7.) Brinson responded, "no, man, what's wrong with you," and "I'm not into that. I'm married," to which Berry laughed in response. (Pl.'s Dep. Dkt. 44-1 at 56:8–9, 58:15–16, 58:20.) Brinson did not interpret these comments as innocent compliments, but rather that Berry liked how his jeans were fitting on his buttocks. (Pl.'s Dep. Dkt. 44-1 at 56:21–22, 57:2–4.) Brinson testified that Berry "complimented [him] as though [Berry] was looking at a woman." (Pl.'s Dep. Dkt. 44-1 at 56:23–24.) Brinson testified that he felt nervous around Berry.[4] (Dkt. 48 ¶ 7; Pl's Dep. Dkt. 44-1 at 52:11.) Eagle Express disputes that Brinson felt nervous around Berry because of the alleged harassment, and specifically cites to testimony by Brinson that Eagle Express labels homophobic. (Dkt. 48 ¶ 8 (citing Pl.'s Dep. Dkt. 44-1 at 52:9–23); Dkt. 47 at 4.) Brinson's testimony is clear that Berry's behavior "upset" him. (Pl's Dep. Dkt. 44-1 at 57:13–14.)

Brinson testified that he reported this incident to Martin Fuentes, his supervisor, on the same day it happened, and that Fuentes responded with, "That's just Jim being Jim." (Pl. Dep. Dkt.

---

[4] Eagle Express objects to the admissibility of Brinson's beliefs, asserting that "'beliefs' are neither admissible nor relevant," citing *Miller v. Karner*, No. 07 C 3332, 2008 WL 2229482 (N.D. Ill. May 29, 2008). (Dkt. 48 ¶¶ 7, 8.) The Court generally overrules Eagle Express' objection pursuant to Fed. R. Evid. 401. Specifically here, a plaintiff must prove that "the plaintiff's workplace was both *subjectively* and objectively offensive" as one element of the prima facie case for a Title VII claim. *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 713–14 (7th Cir. 2017) (emphasis added). Brinson's beliefs about Berry's behavior are relevant to whether his workplace was subjectively offensive, and thus his beliefs are "of consequence in determining" Brinson's sexual harassment claim under Title VII. Fed. R. Evid. 401.

44-1 at 59:7–11, 59:12–14.) Eagle Express disputes that Brinson reported this incident and cites to Fuentes' declaration, in which he states that "[a]t no time prior to March 26, 2016, did Brinson complain to me or otherwise inform me that he believed that he was being sexually harassed by Berry." (Dkt. 43 ¶ 43; Fuentes Decl. Dkt 36-4 ¶ 13.)

The second instance of alleged harassment took place at the Carol Stream postal facility, where Berry asked to hug Brinson by saying, "Man, let me give a hug, man." (Pl.'s Dep. Dkt. 44-1 at 63:3, 64:2.) Brinson testified that in response to Berry, he said, "Jim, come on, man, get away from me." (Pl.'s Dep. Dkt. 44-1 at 62:9–10.) Berry then said "Man, look at your booty," to Brinson. (Pl.'s Dep. Dkt. 44-1 at 64:6.) Berry also told Brinson "I love you," and Brinson believed that Berry wanted to have sex with him. (Dkt. 48 ¶ 13; Pl.'s Dep. Dkt. 44-1 at 63:12, 64:16–17.) Brinson testified that he reported the second incident at the Carol Stream facility to Fuentes when he returned to the Fox Valley facility on "the day it happened." (Pl.'s Dep. Dkt. 44-1 at 65:22–66:1; Dkt. 48 ¶ 13.) Brinson testified that Fuentes thought the situation was funny and laughed in response. (Pl.'s Dep. Dkt. 44-1 at 65:22–66:9; Dkt. 48 ¶ 13.) Although Brinson could not recall the exact date of this incident, his testimony suggests that it may have occurred on March 26, 2016. (Pl.'s Dep. Dkt. 44-1 at 66:1–5, 66:13–15.) Again, Fuentes claims in his declaration that Brinson did not report any harassment by Berry prior to March 26, 2016. (Fuentes Decl. Dkt. 36-4 ¶ 13.)

On March 26, 2016, the third and final instance of alleged sexual harassment took place at the Fox Valley postal facility. (Dkt. 43 ¶ 42; Pl.'s Dep. Dkt. 44-1 at 66:10–15.) Berry and Brinson were in separate trucks pulled up next to one another, when Berry blew kisses and made hearts at Brinson and said, "I love you, man." (Dkt. 43 ¶ 25; Pl.'s Dep. Dkt. 44-1 at 66:13–67:1.) Brinson further testified that Berry said, "Man, when are you just going to be with me?" (Dkt. 48 ¶ 13; Pl.'s

Dep. Dkt. 44-1 at 68:14–15.) This interaction escalated when Brinson and Berry exited their trucks. According to Brinson's deposition testimony, he got out of his truck to seek assistance from one of the postal managers and Berry followed him. (Dkt. 48 ¶ 15.) Brinson said to Berry, "Why don't you just stop doing that, man," and "you're aggravating me." (Pl.'s Dep. Dkt. 44-1 at 70:14–16, 22–23.) Berry then started swearing at Brinson and said that "he wanted to fight" while other employees got in the middle of them. (Pl.'s Dep. Dkt. 44-1 at 71:4–7, Dkt. 43 ¶ 25.) It is undisputed that during this exchange, Brinson said, "Are you a f***** or something?" to Berry. (Pl.'s Dep. Dkt. 44-1 at 72:22–23; Dkt. 43 ¶ 25.)

When Brinson saw Fuentes, his supervisor, he told Fuentes about the incident and said, "I've been telling you about this man. You have done nothing." (Dkt. 48 ¶ 17; Pl.'s Dep. Dkt. 44-1 at 73:17–24.) While Eagle Express again disputes that Brinson reported any prior sexual harassment, Eagle Express acknowledges that Brinson told Fuentes that Berry had been blowing kisses at him and that Brinson wanted him to stop. (Dkt. 43 ¶ 26; Fuentes Decl. Dkt. 36-4 ¶ 6.) Fuentes states in his declaration that he immediately spoke to Berry, "who informed me that he was just joking around and that Brinson had been playing along joking back and forth." (Dkt. 43 ¶ 26; Fuentes Decl. Dkt. 36-4 ¶ 7.)

After speaking with Brinson and Berry, Fuentes spoke with Khaja Misbahuddin, a USPS dock supervisor at the Fox Valley Post Office who witnessed the altercation. (Dkt. 43 ¶ 27; Fuentes Decl. Dkt. 36-4 ¶ 8.) Misbahuddin also wrote an email to Fuentes in which he described the incident, stating that Brinson and Berry were "shouting at the top of their lungs," and used "offensive and profane language." (Fuentes Decl. Dkt. 36-4 ¶ 9.) Misbahuddin's email further stated that, "When they wouldn't stop yelling I had to let them know that if they didn't stop, I

6

would call the cops on them both." [5]   (Dkt. 43 ¶ 29; Fuentes Decl. Dkt. 36-4 ¶ 9.)

After speaking with Brinson, Berry, and Misbahuddin, Fuentes then called his supervisor Ron Oldenburger to inform him of the altercation, and that Brinson claimed Berry had been sexually harassing him. (Dkt. 43 ¶ 30; Fuentes Decl. Dkt. 36-4 ¶ 10.) Brinson also testified that he reported this incident to Oldenburger himself, who requested that Brinson draft up a statement, which he did. (Dkt. 48 ¶ 18; Pl.'s Dep. Dkt. 44-1 at 74:5–21.) Brinson further testified that Oldenburger said that "Martin [Fuentes] should have told him about this," which Eagle Express disputes. (Dkt. 48 ¶ 18; Pl.'s Dep. Dkt. 44-1 at 74:9–10.)

Fuentes and Oldenburger state in their declarations that they met with Brinson and Berry the next day to determine what happened during the altercation. (Dkts. 43 ¶ 31; Fuentes Decl. Dkt. 36-4 ¶¶ 11–12; Oldenburger Decl. Dkt. 36-5 ¶¶ 8–9.)[6]  Fuentes and Oldenburger state that both Brinson and Berry started shouting at each other about the altercation and as a result, Oldenburger sent both employees home. (Dkt. 43 ¶ 32; Fuentes Decl. Dkt. 36-4 ¶ 11; Oldenburger Decl. Dkt. 36-5 ¶ 10.) After sending Brinson and Berry home, Oldenburger immediately contacted Tammy Hough, the director of Human Resources for Eagle Express, and informed Hough of the altercation and Brinson's complaint against Berry. (Dkt. 43 ¶ 34.) Eagle Express contends that it suspended Berry and Brinson pending an investigation because the altercation involved potential violence.

---

[5] Brinson objects to Misbahuddin's account of the altercation, arguing that it is hearsay. The Court can consider Misbahuddin's description of the altercation to Fuentes as evidence of what Eagle Express believed had occurred, and thus whether Eagle Express believed its anti-violence policy had been violated. In other words, Misbahuddin's account is not being offered for the truth of the matter asserted, i.e., what actually took place during the altercation, and therefore is not hearsay. Fed. R. Evid. 801(c)(2). Eagle Express argues that Misbahuddin's email is admissible as a business record per Fed. R. Evid. 803(6). (Dkt. 47 at 3.) The Court declines to rule on whether the email is admissible as a business record at this time and instead will consider the email, not for the truth of the assertions within it, but rather for the email's impact on Eagle Express' decisionmaking.

[6] Brinson disputes that this meeting took place but does not cite to the record to support his dispute. (Dkt. 43 ¶¶ 31, 32.) The Court therefore deems this fact to be admitted since Brinson did "not controvert[] [it] with specific citations to evidentiary material" per Local Rule 56.1(e)(3).

(Dkt. 43 ¶ 35; Hough Decl. Dkt. 36-2 ¶ 8.) Brinson admits that he was suspended, but he appears to dispute that that there was any potential violence. (Dkt. 43 ¶ 35.) Instead, Brinson claims that when HR told him he was suspended, he was also told that another employee accused him of bullying. (Dkt. 48 ¶ 21.)

Hough investigated Brinson's allegations of sexual harassment against Berry by obtaining statements from Eagle Express employees and conducting interviews with the parties involved and other employees. (Dkt. 43 ¶¶ 44–46.) During Hough's interview with Brinson, Hough states that she "asked Brinson why he did not report these events to human resources, and Brinson stated that in his culture, men are raised to handle issues on their own and that he did not feel it appropriate or 'masculine' to ask anyone for help." (Dkt. 43 ¶ 48; Hough Decl. Dkt. 36-2 ¶ 12.) Brinson, while not directly disputing Hough's testimony, claims it is misleading, and notes that he testified that he told Hough during the interview that he had reported the harassment, specifically to his immediate supervisor, Fuentes. (Dkt. 43 ¶ 48; Pl.'s Dep. Dkt. 44-1 at 77:20–23.) After completing their investigation, Hough and Aimee Thiele, the District Operations Manager at Eagle Express, concluded that there was no credible evidence to support Brinson's claim that Berry had sexually harassed him. (Dkt. 43 ¶ 52.) Brinson disputes Eagle Express' conclusion that there was no credible evidence of harassment, but puts forth no evidence to dispute that this was Hough and Thiele's determination. (*Id.*)

Eagle Express terminated both Brinson and Berry on April 22, 2016. (Dkt. 43 ¶ 54.) Thiele and Hough state in their declarations that they based their decision to terminate both Brinson and Berry solely on their violations of Eagle Express' anti-violence policy on March 26, 2016. (Dkt. 43 ¶ 55; Hough Decl. Dkt. 36-2 ¶ 16; Thiele Decl. Dkt. 36-1 ¶ 13.) Brinson disputes this fact and

8

believes he was terminated in retaliation for reporting sexual harassment (Dkt. 43 ¶ 55; Dkt. 48 ¶ 23.) Eagle Express again asserts that Brinson's beliefs are not admissible evidence. As the Court explained, *supra* note 4, beliefs can be relevant and admissible evidence per Fed. R. Evid. 401, including when a prima facie case requires proof of subjective belief. Here, however, the Court sustains Eagle Express' objection and will not consider Brinson's beliefs about why he was terminated because his beliefs alone are not admissible evidence to controvert Eagle Express' supported statement of fact. See *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (stating that the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'") (citation omitted). Brinson testified that Eagle Express terminated him through a phone call from Hough, during which she told him that he was terminated "for zero violence [i]n the workplace or zero tolerance." (Dkt. 48 ¶ 22; Pl.'s Dep. Dkt. 44-1 at 81:12–23.) Brinson further testified that during this phone call, he denied any violence on the job. (Dkt. 48 ¶ 22; Pl.'s Dep. Dkt. 44-1 at 82:1–2.) Eagle Express disputes that Brinson denied any violence at the workplace, and points to Hough's declaration in which she states that Brinson acknowledged during his interview with her that he should have handled the altercation with Berry differently. (Dkt. 48 ¶ 22; Hough Decl. Dkt. 36-2 ¶ 12.) In support of his belief that he was fired in retaliation for reporting sexual harassment, Brinson notes that he "had no write-ups, no reprimands, and no disciplinary actions at" Eagle Express, while Berry had other incidents of misconduct. (Dkt. 48 ¶ 24; Pl.'s Dep. Dkt. 44-1 at 104:17–18, 106:19–21.)

During the period of sexual harassment, Brinson believed that Berry wanted to have sex with him. (Dkt. 48 ¶ 13; *see* Pl.'s Dep. Dkt. 44-1 63:12–14.) Brinson further believed that Berry

liked both men and women and was bisexual, because Berry was married to a woman and "came on to Brinson" and other men at work.[7] (Dkt. 48 ¶ 5; Pl.'s Dep. Dkt. 44-1 at 44:21–24, 45:2–6, 45:9, 45:24–46:1, 50:1–4.)

## Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine if a genuine dispute of material fact exists, the Court must assess the proof as presented in the record from depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The moving party bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). Genuine issues of material fact are not demonstrated by the "mere existence of some alleged factual dispute between the parties," or by "some metaphysical doubt as to the material facts." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (first quote); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (second quote). Rather, "[t]he controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d

---

[7] Eagle Express objects to Brinson's testimony that Berry made advances on other men at work—specifically, that "Berry smacked another man on the buttocks in 2016" and that Berry once responded "mmm, I like that" in reference to a supervisor bending over to pick up a pen. (Dkt. 48 ¶¶ 5, 6.) Eagle Express states that these facts are not based on Brinson's personal knowledge and are hearsay. (*Id*.) The Court overrules Eagle Express' objections. First, the Court may consider these statements as evidence of Brinson's subjective experience of the harassment as based on his sex (male) as opposed to evidence that these events actually took place. Further, the instance involving the supervisor might be an opposing party's statement per Fed. R. Evid. 801(d)(2). (Pl.'s Dep. Dkt. 44-1 at 50:1–4, 50:6–10) (testifying that the Supervisor "told [Brinson] about it . . . . And he told the postal people that if Jim do[es] that again he's going to have him removed from the facility.")

837, 841 (7th Cir. 2016). Once the moving party demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 751 (7th Cir. 2012).

The Court must construe all facts and draw all reasonable inferences in the non-moving party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## Discussion

Eagle Express moves for summary judgment on Brinson's claim that he was subjected to a hostile work environment due to sexual harassment in violation of Title VII, and his claim that Eagle Express retaliated against him for reporting the sexual harassment in further violation of Title VII. The Court takes Eagle Express' arguments on each claim in turn.

### A. Sexual Harassment Claim

"A sexually hostile or abusive work environment is a form of sex discrimination under Title VII." *E.E.O.C. v. Mgmt. Hosp. of Racine, Inc.*, 666 F.3d 422, 432 (7th Cir. 2012). To prevail on a hostile work environment claim under Title VII, a plaintiff must show: "(1) the plaintiff's workplace was both subjectively and objectively offensive; (2) the plaintiff's sex was the cause of the harassment; (3) the harassment was severe or pervasive; and (4) there is a basis for employer liability." *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 713–14 (7th Cir. 2017). Eagle Express argues that there are no genuine disputes of material fact regarding any of these elements and that

11

Eagle Express is entitled to judgment as a matter of law. Eagle Express focuses in particular on the last three elements, arguing that: (1) Brinson cannot prove that Berry harassed him because of his sex, (2) the harassment was not severe or pervasive, and (3) there is no basis for employer liability. The Court disagrees. Based on the factual record, there are several genuine disputes of material fact as to each prima facie element of Brinson's claim. Summary judgment is therefore unwarranted, and a jury must ultimately determine whether Brinson can prevail on his hostile work environment claim.

###    I.    Whether the Harassment Occurred Because of Brinson's Sex

Title VII "prohibits harassment that discriminates against an individual 'because of such individual's . . . sex.'" *Smith v. Rosebud Farm, Inc.*, 898 F.3d 747, 750 (7th Cir. 2018) (quoting 42 U.S.C. § 2000e-2(a)(1)). Based on this language from Title VII, "[t]he critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J. concurring). The Supreme Court clarified that sexual harassment is actionable under Title VII when the harasser and the harassed are of the same sex if the conduct at issue "actually constituted '*discrimina[tion]* . . . because of . . . sex.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998) (alteration in original). *Oncale* further provided examples of "evidentiary routes" plaintiffs may use to demonstrate that same sex harassment was indeed sex discrimination, including: (1) "explicit or implicit proposals of sexual activity . . . . if there were credible evidence that the harasser was homosexual;" (2) sex-specific and derogatory terms "that make it clear that the harasser is motivated by general hostility to the presence [of the plaintiff's sex] in the workplace;" and (3) evidence to compare "how the alleged harasser treated members

of both sexes in a mixed-sex workplace." *Id*. The Seventh Circuit has noted that, while these "evidentiary routes" are instructive, they are not an exhaustive list of how a plaintiff may prove same sex harassment. *Shephard v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999) ("[T]he Court has previously made clear that the means of proving discrimination cannot be reduced to rigid formulae."). The facts, therefore, need not "correspond exactly to any of the examples the Supreme Court has identified," as long as "a reasonable factfinder could infer from those facts that [the plaintiff] was harassed 'because of' his sex." *Id*.

Eagle Express first argues that Brinson cannot prove that Berry harassed him because of his sex because "there is no credible evidence that Berry was homosexual." (Dkt. 35 at 7.) While *Oncale* states that one evidentiary route to proving same sex harassment is through proposals of sexual activity "if there were credible evidence that the harasser was homosexual," the Seventh Circuit, interpreting *Oncale,* has made clear "there is no singular means of establishing the discriminatory aspect of sexual harassment." *Shephard*, 168 F.3d at 1009; *Oncale*, 523 U.S. at 80. In *Shephard*, the court found that evidence in the record, including the harasser's comments on the plaintiff's body and appearance, suggested that the same sex harassment "was borne of sexual attraction," although "none of the[] incidents necessarily proves that [the harasser] is gay." *Id*. at 1010; *see also Smuk v. Specialty Foods Group, Inc*., No. 13-cv-8282, 2016 WL 3742849, at *6 (N.D. Ill. July 13, 2016). The *Shephard* court found "the connotations of sexual interest in [the plaintiff] suggest that [the harasser] might be sexually oriented toward members of the same sex," which "leaves ample room for the inference" that the plaintiff was harassed because of his sex. 168 F.3d at 1010. Similarly, courts have rejected the argument Eagle Express asserts here that "an absence of proof concerning [the harasser]'s sexual desire could—by itself—entitle Defendant to

13

judgment as a matter of law," as long as there is other "evidence that [the harasser] desired a sexual relationship with Plaintiff." *Watkins v. Ill. Cent. Sch. Bus, LLC*, No. 14-cv-8037, 2017 WL 3521422, at *6 (N.D. Ill. Aug. 16, 2017).

The Court similarly finds that there is sufficient evidence to create a reasonable inference that Berry's harassment was due to Brinson's sex. Berry's comment that Brinson's jeans "look real good on you," followed by, "want to come be with me, want to come to my house?" can reasonably be interpreted as an explicit proposal for sexual activity. (Pl.'s Dep. Dkt. 44-1 at 56:3–7.) Berry's invitation for Brinson to "come over to [his] house and be with [him]" similarly suggests that Berry was sexually interested in Brinson. (Pl.'s Dep. Dkt. 44-1 at 55:1–15.) Like in *Shephard,* these statements suggest sexual interest in Brinson that could suggest that Berry "might be sexually oriented toward members of the same sex," indicating that Berry harassed Brinson because of his sex. 168 F.3d at 1010.

Second, Eagle Express argues that the Seventh Circuit's holding in *Holman v. Indiana*, that a bisexual harasser of both men and women does not violate Title VII, prevents Brinson from arguing that Berry's harassment was because of Brinson's sex. 211 F.3d 399, 403 (7th Cir. 2000). The parties do not dispute that Berry was married to a woman. (Dkt. 43 ¶ 36.) Brinson further testified to his belief that Berry was bisexual, which was based on Berry's comments to him and other men at work. (Pl.'s Dep. Dkt 44-1 at 45:2–6, 45:24–46:1, 50:6–10.) *Holman* acknowledged that "Title VII does not cover the 'equal opportunity' or 'bisexual' harasser . . . because such a person is not *discriminating* on the basis of sex. He is not treating one sex better (or worse) than the other." 211 F.3d at 403. Eagle Express' argument fails, however, because there is no evidence that Berry was a bisexual *harasser*, that is, there is no evidence that Berry harassed women as well

14

as men. It is undisputed that there was a driver at Eagle Express who was a woman, and there is no evidence that Berry harassed his female colleague. The evidence thus supports that Berry targeted men in the workplace, and was therefore not an "equal opportunity harasser." 211 F.3d at 403; *see also Shepherd*, 168 F.3d at 1011 ("[the harasser's] propensity to harass women as well as men [is] to a large extent irrelevant here; what matters is whether [the harasser] in fact *did* sexually harass members of both genders."). Based on the record before it, the Court holds that a finder of fact could reasonably conclude that Berry harassed Brinson because he is male.

The Court had difficulty tracking Brinson's argument on this point, because on one hand, Brinson argued that the harassment "was not sexual in nature at all, and . . . had the character of aggressive and targeted bullying," but then later argues that "[t]he obvious reason for which Brinson[] was harassed was because the aggressor believed Plaintiff was sexual and wanted to seek companionship with him." (Dkt. 45 at 8, 9.) The Court need not dwell on this point, however, and will not address whether there are other possible avenues of proving that the harassment was because of Brinson's sex per *Oncale*. Instead, the Court finds that a reasonable jury could infer that Berry's statements were "explicit or implicit proposals of sexual activity" targeted at Brinson because of his sex. *See Oncale*, 523 U.S. at 79.

## II. Whether the Harassment was Severe or Pervasive

Title VII prohibits workplaces that are "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Oncale*, 523 U.S. at 79 (quoting *Harris*, 510 U.S. at 21). To determine if harassment was severe or pervasive, courts must not consider each incident of harassment separately, but rather must "look at the totality of the circumstances." *Hall*

*v. City of Chicago*, 713 F.3d 325, 331 (7th Cir. 2013). "Factors in this assessment include the severity of the allegedly discriminatory conduct, its frequency, whether it was physically threatening or humiliating or merely offensive, and whether it unreasonably interfered with the employee's work performance." *Passananti v. Cook Cnty.*, 689 F.3d 655, 667 (7th Cir. 2012).

Eagle Express argues that no reasonable jury could find that Berry's harassment was severe or pervasive under this standard. Eagle Express notably argues that the harassment "was not the 'hellish' environment necessary to establish a hostile work environment." (Dkt. 35 at 11.) Eagle Express, however, flatly ignores multiple directives from the Seventh Circuit that "the environment need not reach the point of 'hellishness,' . . . . The Supreme Court standard dictates that the discrimination must be only so severe or pervasive so as to affect the terms and conditions of employment. This is a far cry from hellish." *John v. Advoc. Health and Hosps. Corp.*, 892 F.3d 887, 901 (7th Cir. 2018) (citing *Harris*, 510 U.S. at 21–22); *see also Milligan-Grimstad*, 877 F.3d at 714 ("Ten years ago, we told litigants loud and clear that 'hellishness' is not the touchstone of a hostile work environment.") (citation omitted).

The Court notes that Eagle Express denies that any harassment occurred at all. Thus, there is certainly a genuine dispute as to whether any harassment occurred, let alone whether it was severe or pervasive. Nonetheless, Eagle Express argues that the harassment Brinson alleges was neither severe nor pervasive as a matter of law because it "consists of only three incidents of relatively mild comments," and "Brinson does not allege he was touched by Berry, or that he was threatened by Berry, or that he was concerned for his safety at any point." (Dkt. 35 at 9, 11.) The Court finds, however, that a reasonable jury could conclude that Berry's behavior and repeated comments about Brinson's body and sexual overtures were humiliating to the point that they

16

altered the conditions of Brinson's employment. Further, Brinson testified that the last instance of sexual harassment ended with Berry in a "full-blown rage" to the point that other employees physically restrained Berry from Brinson. (Pl.'s Dep. Dkt. 44-1 at 73:2–3.) Indeed, Eagle Express determined Berry violated its anti-violence policy during the last instance of alleged sexual harassment. (*See* Thiele Decl. Dkt. 36-1 ¶ 12; Hough Decl. Dkt. 36-2 ¶ 14.) Given the factual record, there is enough evidence for a reasonable jury to conclude that the repeated sexual solicitations, comments about Brinson's body, and ensuing altercation were sufficiently severe or pervasive to establish a hostile work environment.

The Seventh Circuit has also directed courts to consider the broader context of the alleged harassment beyond the pages of deposition transcripts and declarations:

> What to make of the harasser's behavior. . . is a task that requires one to weigh the tone of his words and deeds and a host of other intangibles that the page of a deposition or an affidavit simply do not reveal. *This is a task for the factfinder after trial, not for the court on summary judgment.*

*Shephard*, 168 F.3d at 1010 (emphasis added). Given the factual record, the question of whether Berry's conduct was ultimately severe or pervasive is most appropriately answered by the jury. Eagle Express is not entitled to judgment as a matter of law on this element of Brinson's sexual harassment claim.

### III.     Whether There Is a Basis for Employer Liability

Under Title VII, an employer is liable for the sexual harassment committed by a co-worker who is not a supervisor "when the employee shows that [the] employer has been negligent either in discovering or remedying the harassment."  *Paschall v. Tube Processing Corp*., 28 F.4th 805, 813 (7th Cir. 2022) (quoting *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000).

Eagle Express argues that it cannot be subject to employer liability as a matter of law because Brinson did not inform his superiors of the sexual harassment prior to the March 26, 2016, altercation. The evidence, however, reflects that there is a genuine dispute over this material fact. In Brinson's deposition testimony, he stated that he told Fuentes, his supervisor, after each instance of harassment. (Pl.'s Dep. Dkt. 44-1 at 59:9, 61:14, 65:22–23, 73:17–21.) Brinson further testified that Fuentes responded by laughing and saying, "That's just Jim being Jim." (Pl.'s Dep. Dkt. 44-1 at 59:13, 66:8–9.) The parties do not dispute that Eagle Express' anti-harassment policy "establishes a complaint procedure that requires employees to immediately report any complaints or concerns of harassment to their *supervisor,* the director of human resources, the safety director, *or* the president of the company." (Dkt. 43 ¶ 8 (emphasis added).) Eagle Express disputes that Brinson reported any harassment to Fuentes and produces a declaration by Fuentes in which he states that Brinson did not inform him of any harassment by Berry prior to March 26, 2016. (Dkt. 48 ¶ 11; Fuentes Decl. Dkt. 36-4 ¶ 13.) The Court cannot simply accept Fuentes' testimony over Brinson's at the summary judgment stage. Here both sides have evidence to support their account of the facts, creating an obvious and genuine dispute of material fact on this element of Brinson's hostile work environment claim. The Court therefore denies summary judgment. Brinson's sexual harassment hostile work environment claim shall proceed to trial before a jury.

**B. Retaliation Under Title VII Claim**

Brinson alleges that Eagle Express unlawfully retaliated against him by terminating his employment because he reported sexual harassment by Berry. (Dkt. 1 at 3–4.) "Title VII prohibits employers from retaliating against employees who engage in activity protected by the statute." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015) (citing 42 U.S.C. § 2000e–3(a)).

To prove retaliation, Brinson must show (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) "there was a causal connection between the protected activity and adverse employment action[]." *Castro*, 786 F.3d at 564. At this stage, the Court must ask if a reasonable jury could infer retaliation based on the evidence as a whole. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Eagle Express argues that it is entitled to summary judgment on Brinson's retaliation claim because Brinson was terminated solely for his violation of the anti-violence policy and "Brinson cannot produce any evidence that calls into question Eagle Express' reason for terminating him." (Dkt. 35 at 14.) Eagle Express then argues that Brinson has abandoned his retaliation claim by failing to defend it in response to the instant motion. The Court agrees. Brinson failed to respond to Eagle Express' legal argument that it is entitled to judgment as a matter of law and that there is no genuine dispute of material fact regarding Brinson's retaliation claim. In his response to Eagle Express' motion, Brinson merely states that he "believed he was a victim and was terminated because he reported the sexual harassment by Berry." (Dkt. 45 at 4.) Brinson then in the very last sentence of his response says, "There are no facts in dispute here for there to be an innocent explanation of why Brinson was allowed to be subject [sic] and treated to be being [sic] sexually harassed and/or *retaliated against for being a victim*." (Dkt. 45 at 12) (emphasis added). Brinson cites no legal authority to support his retaliation claim. Brinson, therefore, abandoned his retaliation claim by failing to defend it. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008) ("[Plaintiff] failed to defend her claim against [Defendant's] arguments. She therefore abandoned the claim.") (citation omitted); *see also Kirksey v. R.J. Reynolds Tobacco Co.,* 168 F.3d 1039, 1041 (7th Cir. 1999) ("[J]udges are busy people. . . . they are not going to do the plaintiff's

research and try to discover whether there might be something to say against the defendants' reasoning. An unresponsive response is no response.").

Even if Brinson had not abandoned his retaliation claim, summary judgment in favor of Eagle Express is appropriate because Eagle Express made a legitimate business decision based on its investigation that Brinson (and Berry) violated its anti-violence policy. This policy broadly prohibits, "verbal and physical work place violence," and states, "that NO arguments with other Eagle Express Lines employees . . .will be tolerated." (Dkt. 43 ¶ 11.) It is undisputed that, during a heated exchange between Brinson and Berry, Brinson used a term that is commonly understood as a derogatory slur. Further, Eagle Express believed that Brinson yelled and used offensive language based on Misbahuddin's account of what happened. The Court therefore finds that there is no genuine dispute of fact that Eagle Express believed that Brinson violated its anti-violence policy and terminated him for that reason. When "assessing a plaintiff's claim that an employer's explanation is pretextual, [the Court does] not sit as a 'super personnel review board' that second-guesses an employer's facially legitimate business decisions." *Argyropoulos v City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008) (quoting *Culver v. Gorman & Co*., 416 F.3d 540, 547 (7th Cir. 2005)). Brinson could "avoid summary judgment by pointing to specific facts that place the employer's explanation in doubt." *Culver*, 416 F.3d at 547. Here, Brinson only points to the fact that he had no write-ups, no reprimands, and no disciplinary actions at Eagle Express while Berry had other complaints against him. These facts do not cast doubt on Eagle Express' explanation that it fired him for violating the anti-violence policy on March 26, 2016. The Court therefore grants summary judgment in favor of Eagle Express with regard to Brinson's retaliation claim.

**Conclusion**

For the foregoing reasons, the Court denies Eagle Express' motion for summary judgment on Brinson's sexual harassment hostile work environment claim and grants summary judgment on Brinson's retaliation claim.


ENTERED:   9/28/23

_____
Nancy L. Maldonado
United States District Court Judge